**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DARRELL WILCOX, MICHAEL MCGUIRE, and DAVID GRIMES, individually and as representatives of a class of participants and beneficiaries in and on behalf of the GEORGETOWN UNIVERSITY DEFINED CONTRIBUTION RETIREMENT PLAN, the GEORGETOWN UNIVERSITY VOLUNTARY CONTRIBUTION RETIREMENT PLAN,<br><br>    Plaintiffs,<br><br>vs.<br><br><br>GEORGETOWN UNIVERSITY, the FINANCE SUBCOMMITTEE OF THE PRESIDENT'S EXECUTIVE COMMITTEE, and CHRISTOPHER AUGOSTINI, formerly Senior Vice President and Chief Administrative Officer of Georgetown University,<br><br>    Defendants. | Civil Action No. 1:18-cv-00422<br><br><br><br>Hon. Amy Berman Jackson |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**<u>LEAVE TO FILE AN AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION .................................................................................................. 1

II.    PROCEDURAL BACKGROUND ....................................................................... 1

III.   LEGAL STANDARD............................................................................................ 2

IV.    ARGUMENT ........................................................................................................ 4

    A.   Plaintiffs Should Not Be Denied Leave to Amend Since the FAC's Vanguard
        Allegations Support an Inference Defendants Failed to Engage in a Prudent
        Decision-Making Process ................................................................................ 4

    B.   Plaintiffs Should Not Be Denied Leave to Amend Since the FAC States A Claim
        for Excessive Recordkeeping Expenses........................................................... 6

       1.   The FAC's Allegations About Other University Plans Are Appropriate........................ 6

       2.   The FAC's Allegations About Asset-Based Fees Are Appropriate ................................ 9

       3.   The FAC's Allegations About Investment Options Menus Are Appropriate ............... 10

       4.   Plaintiffs Adequately Allege Defendants Breached their Duties by Failing to
           Obtain Sufficient 408b-2 Disclosures................................................................. 11

    C.   Plaintiffs' Allegations Regarding Variable Annuities are Appropriate ........................... 13

    D.   Plaintiffs Should be Allowed to Assert A Claim for Breach of the Duty of
        Candor for Failing to Report the Indirect Compensation Fidelity Earned From
        Defendants ..................................................................................................... 15

    E.   Plaintiffs Have Not Delayed in Seeking Leave to Amend ................................................ 18

    F.   Responses to Inaccuracies in Defendants' Background Section ...................................... 19

V.     CONCLUSION.................................................................................................... 25

## **TABLE OF AUTHORITIES**

Cases

*Ackerman v. Waranco, Inc.,*
    55 F.3d 117 (3d Cir. 1995) ........................................................................... 17

*Alas v. AT&T Services, Inc.*,
    2021 WL 4893372 (C.D. Cal. Sept. 28, 2021) ........................................ 18

*Allen v. GreatBanc Tr. Co.*,
    835 F.3d 670 (7th Cir. 2016) ........................................................................ 4

*Appalachian Voices v. Chu,*
    262 F.R.D. 24 (D.D.C. 2009) .................................................................. 3, 18

*Atchinson v. D.C.*,
    73 F.3d 418 (D.C. Cir. 1996) .................................................................. 18, 19

*Baker v. D.C. Pub. Sch.*,
    720 F. Supp. 2d 77 (D.D.C. 2010) .............................................................. 19

*Bowles v. Reade*,
    198 F.3d 752 (9th Cir. 1999) ......................................................................... 6

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) ............................................................... passim

*Bronner v. Duggan,*
    324 F.R.D. 285 (D.D.C. 2018) ..................................................................... 2

*Bush v. Ruth's Chris Steak House, Inc.*,
    277 F.R.D. 214 (D.D.C. 2011) .................................................................... 19

*Caribbean Broad. Sys., Ltd. V. Cable & Wireless P.L.C.*,
    148 F.3d 1080 (D.C. Cir. 1998) ..................................................................... 2

*Cassell v. Vanderbilt Univ.,*
    No. 3:16-CV-2086, 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) ........................ 6

*Confederate Mem'l Ass'n, Inc. v. Hines,*
    995 F.2d 295 (D.C. Cir.1993) ....................................................................... 2

*Cryer v. Franklin Templeton Res., Inc.*,
    2017 WL 4023149 (N.D. Cal. July 26, 2017) ............................................... 6

*Davis v. Washington Univ. in St. Louis,*
    2018 WL 4684244 (E.D. Mo. Sept. 28, 2018) ........................................................ 24

*Divane v. Nw. Univ.,*
    953 F.3d 980 (7th Cir. 2020) ............................................................................... 7

*Erickson v. Pardus,*
    551 U.S. 89 (2007) .............................................................................................. 8

*Fink v. Nat'l Sav. & Tr. Co.,*
    772 F.2d 951 (D.C. Cir. 1985) ........................................................................ 15, 16

*Firestone Tire & Rubber Co. v. Bruch,*
    489 U.S. 101 (1989) ........................................................................................... 18

*Firestone v. Firestone,*
    76 F.3d 1205 (D.C. Cir.1996) ........................................................................... 2, 3

*Foman v. Davis,*
    371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962) ............................................ 2

*G&E Real Est., Inc. v. Avison Young-Washington, D.C., LLC,*
    2018 WL 4680199 (D.D.C. Sept. 28, 2018) .......................................................... 3

*Glass Dimensions, Inc. v. State St. Bank & Trust Co.,*
    285 F.R.D. 169 (D. Mass. 2012) .......................................................................... 6

*Harzewski v. Guidant Corp.,*
    489 F.3d 799 (7th Cir. 2007) .............................................................................. 18

*Henderson v. Emory Univ.,*
    252 F. Supp. 3d 1344 (N.D. Ga. 2017) ............................................................ 7, 11

*Intel Corp. Inv. Policy Comm. v. Sulyma,*
    140 S. Ct. 768 (2020) ........................................................................................ 23

*James v. D.C.,*
    869 F. Supp. 2d 119 (D.D.C. 2012) ..................................................................... 8

*John Hancock Mut. Life Ins. Co.  v. Harris Trust & Sav. Bank,*
    510 U.S. 86 (1993) .................................................................................. 14, 22, 25

*Kelly v. Johns Hopkins Univ.,*
    2017 WL 4310229 (D. Md. Sept. 28, 2017) .......................................................... 7

*Krueger v. Ameriprise Fin., Inc.,*
    304 F.R.D. 559 (D. Minn. 2014) .......................................................................... 6

*LaPrade v. Abramson*,
    2006 WL 3469532 (D.D.C. Nov. 29, 2006) ........................................................................ 19

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) ........................................................................................ 6

*Massachusetts Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985) ...................................................... 4

*McDonald v. Jones*,
    2017 WL 372101 (E.D. Mo. Jan. 26, 2017) ........................................................................ 6

*McGee v. D.C.*,
    646 F. Supp. 2d 115 (D.D.C. 2009) .................................................................................... 20

*Nat'l Sec. Sys., Inc. v. Iola*,
    700 F.3d 65 (3d Cir. 2012) .................................................................................................. 16

*Norris v. Salazar*,
    746 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................................ 2

*Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*,
    698 F.2d 320 (7th Cir. 1983) .............................................................................................. 16

*Reed v. Queens Vill. Comm. For Mental Health for J-CAP, Inc.*,
    2019 WL 4452386 (E.D.N.Y. Sept. 17, 2019) ................................................................... 18

*Sacerdote v. New York Univ.*,
    2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017) .............................................................. 11, 12

*Schmidt v. United States*,
    749 F.3d 1064 (D.C. Cir. 2014) .......................................................................................... 2

*Scott v. J.P. Morgan Chase & Co.*,
    296 F. Supp. 3d 98 (D.D.C. 2017) ...................................................................................... 8

*Sweda v. Univ. of Pennsylvania*,
    923 F.3d 320 (3d Cir. 2019) ................................................................................................ 17

*Taveras v. UBS AG*,
    513 F. App'x 19 (2d Cir. 2013) ..................................................................................... 18, 23

*Taylor v. United Techs. Corp.*,
    2008 WL 2333120 (D. Conn. June 3, 2008) ....................................................................... 5

*Tibble* v. *Edison Int'l*,
    575 U. S. 523 (2015) ........................................................................................................... 5

*Tussey v. ABB, Inc.*,
    2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ........................................................... 6

*United States v. Gilbertson*,
    588 F.2d 584 (8th Cir. 1978) .................................................................................. 4

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
    2016 WL 4507117 (C.D. Cal. Aug. 5, 2016) ........................................................... 5

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ............................................................................................... 16

*Vellali v. Yale Univ.*,
    308 F. Supp. 3d 673 (D. Conn. 2018) ..................................................................... 11

*Walsh v. Marsh & McLennan Cos.*,
    2006 WL 734899 (D. Md. Feb. 27, 2006) ............................................................... 6

*Wilcox v. Georgetown Univ.*,
    987 F.3d 143 (D.C. Cir. 2021) ................................................................................ 19

<u>Statutes</u>

29 U.S.C. 1113(2) .......................................................................................................... 23

I.R.C. § 403(b) ......................................................................................................... 22, 24

<u>Rules</u>

Fed. R. Civ. P. 15 ............................................................................................... 2, 3, 18, 19

Rule 15 ......................................................................................................................... 2, 3

Rule 15(a) .................................................................................................................... 2, 18

<u>Regulations</u>

29 C.F.R. § 2550.408b-2 ..................................................................................... 11, 23, 24, 25

Annual Reporting and Disclosure,
    72 FR 64710- ........................................................................................................... 16

<u>Other Authorities</u>

5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.) ..................................................................... 8

## I.      INTRODUCTION

The motion before the Court is simply a request to allow Plaintiffs the opportunity to amend their Complaint.  Most of the arguments Defendants set forth in their Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Leave to File an Amended Complaint ("Opposition" or "Def. Br.") (Dkt. 59) have nothing whatsoever to do with the question at hand: whether Plaintiffs should be permitted to amend their Complaint. Those few arguments that do address this question rely on misstatements about what this Court and the D.C. Circuit actually held in their opinions in this case.

Plaintiffs' proposed amended Complaint (the "FAC") identifies direct and circumstantial evidence that permits a reasonable inference that the process by which Defendants' retirement Plans were managed was "tainted by failure of effort, competence, or loyalty," which is sufficient to state a claim. *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009). Defendants' Opposition, which is largely a counterstatement of unsupported facts and defenses, does not show that the FAC would not survive a motion to dismiss since the FAC alleges factual questions that cannot be decided on a motion to dismiss. For the reasons discussed in Plaintiffs' opening memorandum, consistent with the Federal Rules and this Court's precedent which both favor liberal leave to amend in most circumstances, which Defendants entirely ignore, Plaintiffs' Mtion should be granted.

## II.     PROCEDURAL BACKGROUND

This Court denied Plaintiffs' original motion seeking leave to amend (Dkt. 37) without examining the substance of the proposed amended complaint filed with that motion, and erroneously ruled Plaintiffs' motion was untimely. The Court of Appeals disagreed and ruled that the motion to amend was timely; it issued a Mandate remanding to this Court.

On September 10, 2021, Plaintiffs and Defendant stipulated, subject to approval of this Court, that the case be reinstated so that Plaintiffs can "file their Motion for Leave to File Amended Complaint within forty-five (45) days of the Court's approval of this Stipulation . . . ." Dkt. 55. The Stipulation clearly contemplates that Plaintiffs would have the opportunity to revise their proposed amended complaint to include facts and circumstances that were discovered or occurred since this Court dismissed the case, and to file a new motion. If not, the Stipulation would have said that Plaintiffs would refile their original motion, and there would be no need of 45 days in which to file. There was no "delay" in filing the FAC. Plaintiffs have complied with all deadlines.

## III.   LEGAL STANDARD

As stated in Plaintiffs opening brief, "'[t]he court should freely give leave when justice so requires,' Fed. R. Civ. P. 15(a)(2), which 'severely restrict[s]' the court's discretion to deny leave to amend and dismiss." *Bronner v. Duggan*, 324 F.R.D. 285, 290 (D.D.C. 2018) (quoting *Caribbean Broad. Sys., Ltd. V. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1084 (D.C. Cir. 1998)). This is largely because courts have recognized a "policy in favor of hearing cases on their merits," which weighs in favor of permitting amendments. *Id.*

Defendants' proffered legal standard (Def. Br. at 11-13) overlooks "the liberal leave policy of Rule 15(a)(2), as made clear by the Supreme Court in *Foman v. Davis,* 371 U.S. 178, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)." *Norris v. Salazar*, 746 F. Supp. 2d 1, 3 (D.D.C. 2010). *See also Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir.1996) (Rule 15(a) provides "liberal standard for granting leave to amend"). Indeed, Defendants' cited cases *support* the liberal policy of amendment. *See Schmidt v. United States*, 749 F.3d 1064, 1070 (D.C. Cir. 2014) (acknowledging that "[w]e have long observed that leave to amend under Rule 15 shall be granted "freely," *Confederate Mem'l Ass'n, Inc. v. Hines,* 995 F.2d 295, 299 (D.C. Cir.1993)," but noting

plaintiff failed to seek leave for court to amend); *Appalachian Voices v. Chu*, 262 F.R.D. 24, 27 (D.D.C. 2009) (granting motion for leave to amend and noting "[t]he court must, however, heed Rule 15's mandate that leave is to be 'freely given when justice so requires.'") (quoting *Firestone*, 76 F.3d at 1208).[1]

Plaintiffs' FAC states a claim sufficient to survive a motion to dismiss.  The FAC offers direct and circumstantial evidence that permits a reasonable inference that the process by which the Plans were managed was "tainted by failure of effort, competence, or loyalty," which is sufficient to state a claim. *Braden*, 588 F.3d at 596. Contrary to Defendants' assertion otherwise, Plaintiffs do not need to plead specific facts about the processes Defendants employed because the details of how fiduciaries make decisions "tend systemically to be in the sole possession of defendants." *Id.* at 598. "[N]o matter how clever or diligent, ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Id.* Nor are Plaintiffs "required to describe directly the ways in which [defendants] breached their fiduciary duties," or "the process by which the Plan was managed." *Id.* at 595–96. Notwithstanding that well-accepted principal, as detailed below, the FAC presents substantial and documented facts supporting Plaintiffs' claims of a flawed process.

Plaintiffs are also not required "to plead facts tending to contradict . . . inferences" supporting alleged lawful conduct. *Id.* Courts "must be cognizant of the practical context of ERISA litigation," *id.* at 598, and "attendant to ERISA's remedial purpose and evident intent to prevent

---

[1] Defendants' reliance on *G&E Real Est., Inc. v. Avison Young-Washington, D.C., LLC*, No. CV 14-418 (CKK), 2018 WL 4680199, at *3 (D.D.C. Sept. 28, 2018) is misplaced.  In *G&E Real Est., Inc.*, the court analyzed a motion to amend premised on "conforming the operative complaint to the evidence and the claims that remain at trial."  *Id.* at 3.  In contrast here, Plaintiffs are not at the pretrial stage or conforming the allegations to produced discovery.

through private litigation 'misuse and mismanagement of plan assets.'" *Id.* at 597 (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 n.8 *1985, 105 S. Ct. 3085, 87 L. Ed. 2d 96 (1985))). "ERISA is a remedial statute to be liberally construed in favor of employee benefit fund participants." *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 677 (7th Cir. 2016). "These considerations counsel careful and holistic evaluation of an ERISA complaint's factual allegations before concluding that they do not support a plausible inference that the plaintiff is entitled to relief." *United States v. Gilbertson*, 588 F.2d 584, 588 (8th Cir. 1978).

## IV.    ARGUMENT

Defendants make several arguments about particular aspects of the FAC that are more appropriate for later stages of litigation. None of the Defendants' arguments support rejection of Plaintiffs' motion for leave to amend the complaint.

### A. Plaintiffs Should Not Be Denied Leave to Amend Since the FAC's Vanguard Allegations Support an Inference Defendants Failed to Engage in a Prudent Decision-Making Process

Defendants first argue that the Court should not allow Plaintiffs to file the FAC because it includes claims concerning overcharges to the Plan relating to services provided by Vanguard. Defendants claim that because the named Plaintiffs did not invest in Vanguard funds they lack Article III standing. *See* Def. Br. at 13-14. However, the case law is clear, because of the representational nature of fiduciary breach claims "on behalf of the plan" under ERISA § 502(a)(2), that once a plaintiff has established an Article III injury due to alleged mismanagement of the plan, he may to "seek relief under [ERISA] that sweeps beyond his own injury" because such claims are "brought in a representative capacity on behalf of the plan as a whole and . . . remedies . . . protect the entire plan." *Braden*, 588 F.3d at 593 (internal quotations omitted). Other courts adopted that approach, such as in *Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2016 WL 4507117, at *4 (C.D. Cal. Aug. 5, 2016), explaining "courts look to the nature of the claims and

allegations to determine whether the pleaded injury relates to the defendants' management of the Plan *as a whole*." Likewise, in *Taylor v. United Techs. Corp.*, 2008 WL 2333120, at \*2-3 (D. Conn. June 3, 2008), the plaintiffs had standing to pursue ERISA representational claims related to funds and revenue sharing even though none of the plaintiffs had invested in the fund in question and none "were adversely affected by revenue sharing." Numerous other cases are in accord.[2]

The FAC's allegations concerning Defendants' imprudent retention of retail class shares of Vanguard funds is not, as Defendants imply, an attempt to revive a claim that was previously dismissed on standing grounds. Rather, it exemplifies Defendants' flawed decision-making process for selecting the Plans' investment options, as no prudent fiduciary of a $2 billion ERISA plan would choose and retain retail class shares rather than lower-cost institutional class shares in the fund. *See Braden*, 588 F.3d at 595 (it was imprudent to offer retail class shares in ten funds). *See also, Tibble* v. *Edison Int'l*, 575 U. S. 523 (2015) (purchase of institutional shares for new funds should have triggered a reassessment of the purchase of retail shares three years prior, giving rise to a new failure to monitor claim). Despite obvious imprudence, as recently as 2020, the Plans offered 31 retail share class Vanguard funds. FAC ¶¶ 18, 108, 113-16. Moreover, the claims regarding payment of excessive compensation for recordkeeping apply to the entirety of the arrangement with three recordkeepers, as do the claims regarding disclosure failures, since no

---

[2] *See also Cryer v. Franklin Templeton Res., Inc.*, 2017 WL 4023149, at \*4 (N.D. Cal. July 26, 2017); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 155-56 (S.D.N.Y. 2017) ("[P]laintiffs do not need to point to individualized injuries with respect to each Plan investment in order to establish constitutional standing in a derivative suit brought pursuant to [502](a)(2)."); *McDonald v. Jones*, 2017 WL 372101, at \*2 (E.D. Mo. Jan. 26, 2017); *Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 567 (D. Minn. 2014); *Glass Dimensions, Inc. v. State St. Bank & Trust Co.*, 285 F.R.D. 169, 175 (D. Mass. 2012) (finding the plaintiff "has established constitutional standing with respect to the 257 funds that it did not purchase."); *Walsh v. Marsh & McLennan Cos.*, 2006 WL 734899, at \*1 (D. Md. Feb. 27, 2006); *Tussey v. ABB, Inc.*, 2007 WL 4289694, at \*2 (W.D. Mo. Dec. 3, 2007).

indirect compensation received by any of the three recordkeepers was disclosed on any 5500 for the Plans.

The FAC's Vanguard allegations support an inference that Defendants failed to engage in a prudent process to monitor and control recordkeeping expenses and other administrative fees. FAC ¶¶ 17, 20, 31-32. Defendants ignore the fact that Plaintiffs' ERISA § 502(a)(2) claims are "brought in a representative capacity on behalf of the plan as a whole." *Braden*, 588 F.3d at 593.[3] Thus, the FAC properly includes allegations concerning Vanguard.

**B.  Plaintiffs Should Not Be Denied Leave to Amend Since the FAC States A Claim for Excessive Recordkeeping Expenses**

**1.  The FAC's Allegations About Other University Plans Are Appropriate**

In response to the Court's Opinion, Dkt. 36 ("Op."), Plaintiffs included allegations in the FAC describing five other university 403(b) plans that have consolidated recordkeeping with a single provider. The FAC alleges that these other university plans sought recordkeeping consolidation based on an understanding that multiple recordkeepers results in higher fees and consolidation benefits participants. *See* Motion at 8-10. The five other plans cited in the FAC demonstrate that Georgetown, by retaining multiple recordkeepers, maintained a costly and ineffective recordkeeping structure. The other plans show many other universities recognized the flaws in a multi-recordkeeping structure and sought to remedy such through recordkeeping consolidation. By identifying several similarly situated university 403(b) plans that reduced fees through consolidation and competitive bidding, Plaintiffs state a plausible claim that Defendants breached their duty. The majority of federal courts that have considered claims that a university-

---

[3] *See also Bowles v. Reade*, 198 F.3d 752, 759 (9th Cir. 1999) ("An individual beneficiary may bring a claim for breach of fiduciary duty only for the benefit of the plan."); *Cassell v. Vanderbilt Univ.,* No. 3:16-CV-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018) (ruling that a plaintiff may seek relief under Section 1132(a)(2) "that sweeps beyond his own injury.").

sponsored 403(b) plan has retained multiple recordkeepers, paid them uncapped, excessive, revenue sharing fees, and/or failed to use a competitive bidding process to retain their multiple and/or overpaid recordkeepers, has found that these types of allegations state a claim, rejecting arguments like those advanced by Defendants. *See e.g.*, *See Henderson v. Emory Univ.*, 252 F. Supp. 3d 1344, 1353 (N.D. Ga. 2017) ("plaintiffs' allegation that a prudent fiduciary would have chosen one recordkeeper instead of three is sufficient to state a claim for relief"); *Kelly v. Johns Hopkins Univ.*, 2017 WL 4310229, at *2 (D. Md. Sept. 28, 2017) ("allegations that a prudent fiduciary would have chosen fewer recordkeepers and run a competitive bidding process for the recordkeeping services support a breach of fiduciary duty claim").

Importantly, the one university case whose dismissal was upheld by the Seventh Circuit Court of Appeals, *Divane v. Nw. Univ.*, 953 F.3d 980, 983 (7th Cir. 2020), *cert. granted sub nom. Hughes v. Nw. Univ.*, 141 S. Ct. 2882, 210 L. Ed. 2d 989 (2021), and *vacated and remanded sub nom. Hughes v. Nw. Univ.*, No. 19-1401, 2022 WL 199351 (U.S. Jan. 24, 2022) was reversed today and remanded to the court below.  As in this case, the Northwestern plaintiffs alleged that respondents failed to monitor the Plans' investments in a number of ways, including by retaining recordkeepers that charged excessive fees, offering 400 options likely to confuse investors, and neglecting to provide cheaper and otherwise-identical alternative investments.

The proposed new allegations in the FAC detailing how other university plans decided to consolidate recordkeeping demonstrate that prudent fiduciaries utilize a single recordkeeper and have migrated to the single recordkeeper structure.  Because Defendants did not engage in this analysis, and they failed to put recordkeeping services out for bidding, Defendants allowed the Georgetown Plans to retain multiple recordkeepers who charged the Plans duplicative and excessive fees, and accordingly, breached their duties to play reasonable recordkeeping fees.

7

In response to these new allegations, Defendants contend, contrary to overwhelming precedent, that these allegations should be ignored, and try to hold Plaintiffs to a higher standard than required on a motion to amend.  Defendants' arguments really concern questions of disputed fact. Defendants attempt to disagree with Plaintiffs' factual allegations is improper.  Of course, at this stage the Court "must accept as true all of [plaintiffs'] factual allegations," *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (per curiam), and draw "all reasonable inferences ... in favor of the pleader," § 1357 Motions to Dismiss—Practice Under Rule 12(b)(6), 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.).

Defendants cite several sources outside of the complaint and such references should be disregarded.  At the motion to dismiss stage – let alone on a motion to amend – a court is "confined to the four corners of the complaint." *James v. D.C.*, 869 F. Supp. 2d 119, 123 n.2 (D.D.C. 2012). Defendants have made no effort to show that these references are authentic or integral to the Plaintiffs' claims.  *See e.g.*, *Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 105 (D.D.C. 2017) (finding that a court should only consider documents outside of the complaint "if those documents' authenticity is not disputed, they were referenced in the complaint, and they are 'integral' to one or more of the plaintiff's claims.").

As it stands, the proposed FAC now identifies several comparable university plans that decided to consolidate to a single recordkeeper as a means for reducing fees and benefiting plan participants.  FAC ¶¶ 87-100.  Plaintiffs are not arguing that TIAA should not be recordkeeper or the TIAA offerings are not worthwhile investments as Defendants contend. In fact, it is well within Plaintiffs' allegations, that if the TIAA products are so exceptionally desired, Georgetown could have consolidated recordkeeping by continuing to retain TIAA and negotiate lower fees.  Indeed, this is exactly what CalTech did by choosing to consolidate to a single recordkeeper – TIAA – and

then negotiation over $15 million in revenue sharing rebates from TIAA, which was returned to the plan to benefit participants. *See* FAC ¶ 97. Defendants' retort to the Caltech example is that Caltech lost access to Fidelity mutual funds. Putting aside that such argument goes beyond the complaint and cannot be verified or authenticated, the availability of specific funds is irrelevant as it is not Plaintiffs' burden to identify the exact plan details – neither Rule 8 nor the text of ERISA require such.

## 2. The FAC's Allegations About Asset-Based Fees Are Appropriate

Defendants argue that amendment is not warranted because this Court dismissed the "same allegations" concerning imprudent asset-based fees – but then almost immediately contradict themselves by acknowledging that the "proposed amended complaint adds additional allegations of fees purportedly paid by Plan participants for recordkeeping and administrative expenses." Def. Br. at 21-22 (citing FAC ¶¶ 13-15). Defendants cannot have it both ways – the Court has not considered the FAC's new allegations concerning asset-based fees.

The FAC bolsters Plaintiffs' allegations that Defendants' approval of asset-based fees resulted in unreasonable per participant recordkeeping and administrative expenses. FAC ¶¶ 13-15, 66-69. Defendants failed to prudently monitor such fees, which increased as the Plans' assets grew, despite no change in the services provided. FAC ¶¶ 19, 31-32, 66-69, 71-72, 139. In 2014, TIAA received at least $2.1 million for recordkeeping ($196 per participant), when the median per participant fee for comparable plans was $70. FAC ¶¶ 13; 71. This calculation is based on 15 bps paid on the Traditional Annuity (FAC ¶ 13 n. 7) but does not include amounts TIAA earned on the investment return of its general account, which Plaintiffs estimate to be a minimum of 1.5% of the total invested in the Traditional Annuity. FAC ¶ 16. The Plans also paid additional asset-based recordkeeping fees to Vanguard and Fidelity that amounted to $113 per participant in 2015. FAC

9

¶ 17. Defendants caused their DC Plan participants to pay excessive recordkeeping fees in some years in the range of $280 per participant, and participants in the Voluntary Plan to pay roughly $175 per participant. FAC ¶ 20.

Defendants claim that Plaintiffs' allegation that "a reasonable recordkeeping fee" for the Plans would have been "approximately $35 per participant" is flawed because of certain perceived discrepancies in Plaintiffs' descriptions of the Plans' fees. Def. Br. at 22. That is not so. Defendants attempts to cast confusion around allegations of excessive fees is nothing more than a smokescreen. The FAC makes it clear that TIAA-CREF was charging 35 basis points in administrative expense and distribution fees, and that all of that amount should have been credited to the plans as payment for recordkeeping and administrative expense. FAC ¶¶ 52-59. First, Plaintiffs *have alleged* that Defendants failed to properly disclose recordkeeping fees. FAC ¶¶ 7-10, 21-23, 151-53. As a result, Plaintiffs have been forced to make estimates and draw inferences as to the amounts of asset-based fees during the Class Period. FAC ¶¶ 24-27. Second, even if Defendants were correct (they are not), they do not dispute that the Plans' per participant asset-based recordkeeping fees would still be many times greater than $35 per participant. Finally, Defendants' argument ignores that the $35 per participant fee is based upon benchmarking data that is cited in the FAC, including NEPC studies, and not Plaintiffs' calculations. FAC ¶¶ 12-13, 63, 67.

### 3. The FAC's Allegations About Investment Options Menus Are Appropriate

Defendants clearly misconstrue Plaintiffs' allegations regarding the excessive number of investment choices.  *See e.g.*, FAC ¶ 74. Plaintiffs are not claiming any damages with respect to the excessive number of choices. Instead, Plaintiffs cite this design flaw as evidence of a flawed fiduciary process.  And, while Defendants' Opposition cites *Vellali v. Yale Univ.*, 308 F. Supp. 3d

673, 686 (D. Conn. 2018), *Henderson*, 252 F. Supp. 3d at 1350, and *Sacerdote v. New York Univ.*,

2017 WL 3701482 (S.D.N.Y. Aug. 25, 2017), there are two material differences in the cases.

Whereas the Yale and Emory plans offered, respectively, 115 and 111 investment choices, until

2018, the Georgetown Plans offered more than 400. More importantly, Georgetown's own Benefit

Advisory Committee expressed specific concern about the extraordinary number of options in

relation to the Committee's fiduciary responsibility. FAC ¶ 76.

### 4.  Plaintiffs Adequately Allege Defendants Breached their Duties by Failing to Obtain Sufficient 408b-2 Disclosures

As shown above and in Plaintiffs' Motion, the proposed FAC alleges that Defendants

violated Section 408(b)(2) of ERISA by failing to obtain adequate Rule 408b-2 disclosures.

Motion at 6-7; FAC ¶ 14.  There is not dispute about what Section 408(b)(2) says. Defendants

correctly explain that ERISA Section 408(b)(2) requires fiduciaries to show that "no more than

reasonable compensation is paid" to a party-in-interest for a particular service or transaction, or it

will be deemed a transaction prohibited by ERISA.  *See* Def. Br. at 24.  Defendants also are correct

that the regulations implementing 408(b)(2) – 29 C.F.R. § 2550.408b-2 – create disclosure

requirements that ensure that fiduciaries understand what compensation is being paid to their

plans' service providers. *Id.*

The proposed FAC takes issue with the propriety of the disclosures that Defendants

received from TIAA concerning, in particular, the total indirect and direct compensation that TIAA

received from Georgetown, which is the critical information needed under the 408b-2 regulations.

Essentially, the FAC alleges that the disclosures were deficient. This is a factual issue that should

not impact a motion to allow amendment of a complaint. Defendants inexplicably argue that the

fact that they provided a disclosure on the Plan website somehow immunizes them from any

allegation that their disclosures are deficient. *See* Def. Br. at 25.  That is not the case, and

Defendants cite no authority that indicates that Plaintiffs are unable to challenge the propriety of the disclosures simply because one was made. Again, the questions Defendants raise are not questions that challenge the sufficiency of a complaint (or, as here, a motion to allow amendment of a complaint) but rather questions that should be resolved on a full factual record after discovery at a later stage of litigation (*i.e,* summary judgment or trial).

Defendants' arguments about required 408(b)(2) disclosures do not begin to address the allegations of the proposed FAC regarding Defendants' failure to obtain complete and accurate disclosures of all direct and indirect compensation received by Plan recordkeepers.  Instead, Defendants simply point to the fact that the expense ratios for each of the Plans' designated investment options have been disclosed.  The question, however, and the point of the allegations, is that, based on the complete failure to disclose the indirect compensation received by TIAA, Fidelity or Vanguard on the Plans' Annual Reports on Form 5500, Defendants failed to obtain disclosure of the amount of compensation received indirectly by the three recordkeepers through revenue sharing from Plans' investment funds; a principal purpose of the 408(b)(2) disclosure rules.  Disclosure of the expense ratios of the various investment funds discloses only the amount of compensation paid to the fund's manager. It does not disclose the amount of indirect compensation paid by the fund manager to the recordkeeper; information which is essential to a fiduciary's determination that such compensation is reasonable.[4] And despite Defendants' bald assertion that "Plaintiffs offer no facts or law to support their bare conclusion that Georgetown

---

[4] In another remarkable statement, Defendants assert that "Plaintiffs do not even attempt to allege that a prudent fiduciary must comb through third party disclosures to detect potential errors", Def. Br. at 26, ignoring Plaintiffs' allegation that "a simple review of the prospectuses for the funds [a third party disclosure] would have informed Defendants that participants were paying far more for recordkeeping and administrative services than was being represented by TIAA," proposed FAC at ¶ 23, while simultaneously claiming that the prospectus (a third party disclosure) satisfied the 408(b)(2) disclosure requirements.

breached its fiduciary duty, nor do they allege that the purported breach caused them to suffer any harm," paragraph 35 of the proposed FAC expressly states:

> Defendants' failure to properly evaluate and assess the reasonableness of the recordkeepers' charges for recordkeeping and administrative expense, and Defendants' failure to evaluate and/or understand the terms and nature of the TIAA and Vanguard investment products, are indicative of a flawed process and breaches of Defendants' duties of prudence and diligence that have resulted in the payment by participants of millions of dollars in excessive and unreasonable fees.

FAC ¶ 35.

It is not Plaintiffs but rather Defendants who face a challenge with respect to compensation received by TIAA in connection with the Traditional Annuity. Plaintiffs have plausibly alleged that since the Traditional Annuities are general account products, TIAA's general account holds plan assets, TIAA is functioning as an investment manager of those assets, and therefore, its compensation for those management services is measured by the spread between the net earnings on the general account and the interest credited to the Plans under the contracts. An affirmative defense to that claim could be that the Traditional Annuities constitute "guaranteed benefit policies" as provided in ERISA § 401(b). "In sum, we hold that to determine whether a contract qualifies as a guaranteed benefit policy, each component of the contract bears examination. A component fits within the guaranteed benefit policy exclusion only if it allocates investment risk to the insurer." *John Hancock Mut. Life Ins. Co.  v. Harris Trust & Sav. Bank,* 510 U.S. 86, 106 (1993).  Likewise, Plaintiffs' quotation from the Prospectus for the CREF variable annuities, indicating that the participant bears all investment and mortality risk, demonstrates definitively that these contracts are not insurance. FAC ¶¶ 26, 27.

### C.  Plaintiffs' Allegations Regarding Variable Annuities are Appropriate

Defendants' attack on Plaintiffs' allegations that the CREF "variable annuities" are not actual annuities is disingenuous at best.  "There is an "[a]ccumulation [p]eriod" that ends at the

"annuity starting date," after which the accumulated credits are translated into a one-life or two life annuity or an annuity with a fixed or guaranteed term." Def. Br. at 28 (footnote references to the prospectus for the CREF Equities Retirement Fund omitted). But as explicitly alleged in the proposed FAC, and as stated in the 2014 prospectus cited by Defendants, "if the people receiving income from an Account's annually revalued annuity fund live longer, as a group, than expected, *the amount payable to each will be less than if they as a group die sooner than expected. So the 'mortality risk' of each Account's annuity fund falls on those who receive income from it and is not guaranteed by either CREF or TIAA.*"[5]  In other words, despite Defendants' assertion that an annuity is effectively an insurance policy (Def. Br. at 6) there is no insurance aspect to these so-called annuities, because TIAA-CREF bears no risk, either with respect to investment return or mortality.  This is critical, since the fundamental basis for Defendants' Opposition to Plaintiff's motion for leave to amend, as well as this Court's dismissal of Plaintiffs' claims, is the status of the TIAA-CREF investment contracts as "annuities" that are fundamentally different, more complicated, and more expensive to administer, than investment options in 401(k) plans.

These facts also refute the validity of the erroneous legal standard on which defendants rely: that fiduciary conduct is a relative standard measured in relation to the conduct of other fiduciaries in similar positions, a standard that is patently incorrect.[6] The D.C. Circuit has held that "[p]rudence     under     ERISA     is     measured     according     to the objective prudent person standard developed in the common law of trusts."  *Fink v. Nat'l Sav. & Tr. Co.*, 772 F.2d 951, 955 (D.C. Cir. 1985).  Defendants, however, improperly claim that to

---

[5]   SEC,   College   Retirement   Equities   Fund   Form   N-3,   at   7   (2014), https://www.sec.gov/Archives/edgar/data/777535/000093041314002154/c76422_485bpos.htm (emphasis added).

[6] *See* Def. Br. at 1 ("ERISA thus imposes a relative standard of care that obligates fiduciaries to heed the practices of their peers.").

establish a claim requires proof of both a flawed process and proof that decisions based on that flawed process were out of step with the decisions of other fiduciaries engaging in the same flawed process. Def. Br. at 2 ("But to prove a claim for fiduciary breach, Plaintiffs must establish both that Georgetown employed a defective process and that its decisions were out of step with those of comparable institutions.")  In other words, Defendants ask this Court to hold that there can be no fiduciary liability if the bad decisions of the defendant fiduciary are consistent with the bad decisions of other similar fiduciaries.  The court should reject that offer.

### D. Plaintiffs Should be Allowed to Assert a Claim for Breach of the Duty of Candor for Failing to Report the Indirect Compensation Fidelity Earned From Defendants

Defendants attack Count III of Plaintiffs' proposed FAC, which alleges that Defendants breached their "duty of candor" by failing to report on Form 5500 "all direct and indirect compensation received by the Plans' recordkeepers in connection with the provision of recordkeeping and administrative services." FAC ¶ 151. Specifically, they challenge the FAC's allegation that "Defendants failed to report any of the indirect compensation received by either TIAA or Vanguard for recordkeeping services and erroneously and misleadingly reported that all of Fidelity's indirect compensation was 'eligible indirect compensation'; a report that is demonstrably false." *Id.*

There is nothing wrong with Plaintiffs' allegations that would bar Plaintiffs from amending their complaint to add a breach of the fiduciary duty of candor. Defendants argue that their failure to disclose Fidelity and Vanguard's indirect compensation is not actionable because they had no duty to disclose that information in the Plan's 5500s. Def. Br. at 31. Wrong again. Defendants' failure to make required disclosures is a statutory violation. The Preamble to the regulations requiring 5500 disclosures make that clear:

> The Form 5500 Annual Return/Report is the primary source of information concerning the operation, funding, assets, and investments of pension and other

employee benefit plans…for plan participants and beneficiaries…" Annual Reporting and Disclosure, 72 FR 64710-01.

-----------------------------------------------------------------------

With respect to service providers…who received…other indirect compensation, the Schedule C requires more detailed information on the indirect compensation, including, in the case of certain key service providers, information regarding the payor if the service provider received during the plan year indirect compensation from a single source of $1,000 or more.

Annual Reporting and Disclosure, 72 FR 64710, 64712, 72 FR 64710-01, 64712.

Courts have long recognized that ERISA fiduciaries owe a duty of candor to Plan participants and beneficiaries. *See, E.g., Varity Corp. v. Howe,* 516 U.S. 489, 506 (1996) ("As other courts have held, '[l]ying is inconsistent with the duty of loyalty owed by all fiduciaries and cofidied in section 404(a)(1) of ERISA…'") (quoting *Peoria Union Stock Yards Co. Ret. Plan v. Penn Mut. Life Ins. Co.*, 698 F.2d 320, 326 (7th Cir. 1983); *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 98 (3d Cir. 2012) (stating, "A fiduciary's duties of loyalty and prudence under ERISA § 404 encompass a duty to communicate candidly…").[7] Monitoring and controlling compensation paid to 401(k) plan service providers, and then making statutorily-mandated disclosures concerning such compensation, is also a fiduciary function. *Sweda v. Univ. of Pennsylvania,* 923 F.3d 320, 328 (3d Cir. 2019) ("Fiduciaries must also understand and monitor plan expenses."). Despite owing the duty of candor to the Plan, Defendants failed to take the necessary steps to ensure that material information concerning indirect compensation was reported on the Form 5500 and was

---

[7] *See also Chero-Key Pipiing Co. v. Great-West Life & Annuity Ins. Co.,* 20210 WL 1169957 (S.D. Tex. Mar. 23, 2010) at n. 14 ("The general duties that fiduciaries owe include a duty of loyalty and utmost good faith, a duty of candor, a duty to refrain from self- dealing…") *Black's Law* Dictionary 625 (6th ed. 1990) (defining fiduciary as "a person having duties involving good faith, trust, special confidence and candor," "created by his undertaking to act primarily for another's benefit.").Defendants' cite *Ackerman v. Waranco, Inc.* 55 F.3d 117, 124 (3d Cir. 1995) which was decided years before ERISA's current statutory disclosure framework was enacted and it involved a welfare benefits plan,, not a defined contribution retirement plan, as here.

available to Plan participants. FAC ¶ 151-153.

Defendants cannot dodge Claim III by claiming that submitting a Form 5500 to the DOL is not a fiduciary function. Def. Br. at 31-21.  The "administrator" of a qualified retirement plan is obligated by statute to prepare and file the plan's Annual Report. ERISA §§ 103, 104. The "administrator" is the Plan Administrator and defined in ERISA to mean "(i) the person specifically so designated by the terms of the instrument under which the plan is operated...." Filing accurate Annual Reports is an expressly assigned statutory obligation of a named fiduciary to the Plan and therefore, by definition, a fiduciary obligation. It is undoubtedly true that merely filling out a q required report form like the 5500 is a ministerial function.  That analysis would certainly apply to the clerk or staff employee who merely transferred numbers reported by plan service providers onto the Form 5500.  But it should not apply to the Plan Administrator who chose, in the exercise of his or her discretion, to fail to report required compensation information clearly in their possession. Persistently filing inaccurate Annual Reports violates a Plan Administrator's duty of candor and could subject the Plan Administrator to the criminal penalties of perjury. ERISA § 502(a)(3) expressly allows a plan participant to bring an action to "enjoin any act or practice which violates any provision of this subchapter...." Deliberately filing false Annual Reports stating that Fidelity received $0 in indirect compensation is clearly an exercise of discretion by a plan fiduciary. "ERISA explicitly authorizes suits against fiduciaries and plan administrators to remedy statutory violations...." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989).

Nor can Defendants avoid a claim for fiduciary breach of a duty of candor by arguing that such a claim "is akin to a misrepresentation claim" and thus Plaintiffs were required to allege reliance and harm in order to even raise such a claim lacks any legal basis. Def. Br. at 31. That is also incorrect. *See, e.g., Harzewski v. Guidant Corp.,* 489 F.3d 799, 805 (7th Cir. 2007) ("The

burden of proving fraud is heavier than that of proving a breach of fiduciary duty.").[8]

### E. Plaintiffs Have Not Delayed in Seeking Leave to Amend

Defendants accuse Plaintiffs of undue delay because, they claim that Plaintiffs could have included some of their new allegations in their original Complaint.[9] Def. Br. at 32-33. Defendants' argument is meritless. The mere fact that new allegations could have been included in a prior pleading does not constitute undue delay. *See Bush v. Ruth's Chris Steak House, Inc.*, 277 F.R.D. 214, 216 (D.D.C. 2011) (granting leave to amend to add class allegations even though "Plaintiffs could have made their intention to seek relief on the behalf of a class sooner…") Moreover, this Court has not set a pleading amendment deadline and, therefore, this motion is timely.[10] *See Bush*, 277 F.R.D. at 216 (allowing leave to amend where the motion was filed prior to the pleading amendment deadline). Also, the Court of Appeals has ruled that Plaintiffs timely sought leave to amend. *See Wilcox v. Georgetown Univ.*, 987 F.3d 143, 149 (D.C. Cir. 2021).

Defendants' undue delay argument rests on a few cherrypicked allegations, including

---

[8] *Taveras v. UBS AG*, 513 F. App'x 19, 24 (2d Cir. 2013) dismissed a candor claim in an SEC filing not a 5500 involving indirect compensation paid to a vendor. Defendants' citation to *Reed v. Queens Vill. Comm. For Mental Health for J-CAP, Inc.* 2019 WL 4452386, at *6 (E.D.N.Y. Sept., 17, 2019) is inapt. That case merely states that the act of filling out the form of a form for a Form 5500 is not the same as "'discretionary authority or discretionary control respecting management' of plan assets or respecting 'administration' of the plan." Defendants also erroneously cite *Alas v. AT&T Services, Inc.*, 2021 WL 4893372 at *15 (C.D. Cal. Sept. 28, 2021), a summary judgment decision – not as here a motion to simply amend the complaint. Moreover, that decision is currently on appeal before the 9th Circuit.

[9] Defendants' undue delay argument is at odds with Fed. R. Civ. P. 15(a), which "does not prescribe a time limit on motions for leave to amend." *Appalachian Voices*, 262 F.R.D. at 27 (citing *Atchinson v. D.C.*, 73 F.3d 418, 426 (D.C. Cir. 1996) (additional cites omitted)). "Nor does the prolonged nature of a case affect whether a plaintiff may amend a complaint." *Baker v. D.C. Pub. Sch.*, 720 F. Supp. 2d 77, 82 (D.D.C. 2010) (granting leave to amend).

[10] Defendants' citation to *LaPrade v. Abramson*, 2006 WL 3469532, at *4 (D.D.C. Nov. 29, 2006), misses its mark because plaintiff in that case sought leave to file a *fourth* amended complaint *after* the pleading amendment deadline.

Plaintiffs' new breach of duty of candor claim (FAC ¶¶ 151-53), and Plaintiffs' new allegations that five other universities were able to drastically lower recordkeeping expenses by consolidating such administrative functions with a single recordkeeper. *Id*. ¶¶ 86-98. Defendants assert that because some facts supporting these allegations were gleaned from sources that were available at the time Plaintiffs commenced this lawsuit, Plaintiffs were obligated to include all such allegations in their initial pleading. Having failed to do so, Defendants argue that Plaintiffs should be forever barred from bringing such claims. However, as set forth in *Bush*, *supra*, that is not the standard for undue delay under Rule 15(a)(2). And Defendants' reliance on cases where leave to amend was sought after the pleading amendment deadline, *see LaPrade*, 2006 WL 3469532, at *5, provide no support for Defendants' position.[11] Accordingly, Defendants' argument must be rejected.

### F.  Responses to Inaccuracies in Defendants' Background Section

Although the motion presently before the Court is one to allow amendment of the complaint, the Background section in Defendants' Opposition consists of a series of counterstatements of facts that are more appropriate at the summary judgment stage of the case along with unsupported conclusions of law.  In order to provide a clear record, Plaintiffs have set forth and disputed these contentions below, although, for the most part, these issues are not appropriately decided prior to discovery during a motion to amend the complaint.

---

[11] Defendants' reliance on *McGee v. D.C.*, 646 F. Supp. 2d 115, 120-22 (D.D.C. 2009), is misplaced, as leave to amend was denied on grounds that plaintiff's D.C. Whistleblower Act and intentional infliction of emotional distress claims for employment retaliation were barred due to his failure to obtain right to sue letter from Equal Employment Opportunity Commission. His new contract claims, which duplicated his contemporaneously-filed discrimination or retaliation claims, failed for the same reason.

**Plaintiffs' Claim: The Plans paid excessive compensation for recordkeeping and administrative services. Count I.**

**Defendants' Responses**:

> a. **"[I]t was inappropriate to compare plans offering "long-term annuities" with those offering only "short-term investments." Defs." Br. at 8, Op. at 25.**

This "finding" inappropriately relied on material and information that was both inappropriately included in Defendants' Memorandum and inaccurate, requiring the District Court to assume that: (1) the TIAA-CREF variable annuities include all the attributes of the annuities described in Defendants Memorandum and Opposition based on generic definitions of "annuity" without the benefit of a thorough review of the terms of the Plans' annuity contracts; (2) that annuities in general, and the TIAA-CREF annuities in particular, are long-term investments and the mutual funds and other collective investment trusts held in the Plans, and in other similar plans, are not; and (3) that the annuities held in the Plans are in fact more expensive to maintain and keep records for than other collective investment vehicles. Can this deficiency be cured by enhanced allegations? Surely a plaintiff should be able to introduce additional facts countering the inaccuracies in Defendants' submission, as Plaintiffs have done. The proposed FAC includes express and detailed allegations disputing those assumptions and reciting the terms of the prospectus for those variable "annuities" demonstrating that they operate no differently than other collective investment vehicles such as mutual funds and collective investment trusts. FAC ¶¶ 25, 26, 53-55.2.

> b. **It is inappropriate to compare 403(b) plans with 401(k) plans because 403(b) plans were designed around annuities and 401(k) plans are not, and annuities remain the hallmark of 403(b) plan. Defs. Br. at 4.**

Here again Defendants improperly introduce "evidence" outside the allegations of the complaint and not subject to judicial notice, citing to two separate surveys and a Statement of

Principles adopted by the Association of American Colleges and Universities in 1987, to offer

what amounts to a defense of Plaintiffs' claims. *See* Defs. Br. at fns. 2 and 4.[12] Even if the statement

were true, as in a. above, it presumes that the annuities held in the Plans are fundamentally different

from investment choices available in 401(k) plans, and that those differences result in greater

expense.   Again, notwithstanding the inappropriate submission of evidence, the question here is

whether the noted deficiency be cured by additional facts.   The answer is clearly yes, as

demonstrated by citation to the terms of the so-called annuities in paragraphs 25, 26, 53-56 of the

proposed Amended Complaint, and identification of multiple other university plans that have acted

to address the archaic administration of these plans.[13] The very design of the Georgetown Plans

belies this archaic view. Although the Plans offer eight variable annuities and one fixed income

annuity, until recently they have offered more than 400 mutual funds, including 29 TIAA mutual

funds.

### c.   "[T]he collegiate retirement system of annuities predates by decades the enactment of I.R.C. § 403(b)." *Id.*

Though far from clear, Defendants appear to argue that their conduct should not be judged

by modern standards of fiduciary behavior because 403(b) annuities have been around a long time.

---

[12] The survey cited by Defendants' hardly supports their assertion that only 6% of 401(k) plan "offer annuities." The survey contains a table with a list of "core investment options" available in 401(k) plans and includes as one of 22 entries "In-Plan Retirement Income Product (Annuity)." There is no indication of what an In-Plan Retirement Income Product is or how it compares the TIAA-CREF annuities, and the reference clearly does not mean that 401(k) plans don't offer any other form of annuity.  For example, the table includes 'Stable value/GIC'. Many large insurance companies offer stable value products through a group annuity contract and all GICs (guaranteed investment contracts) are fixed income investments offered through group annuity contracts.

[13] It is noteworthy that Defendants cite only to these oblique and improperly introduced sources but fail to reference the terms of the Plans' annuity contracts. Nor do they address the citations in the proposed Amended Complaint to the annuities' prospectus that expressly states that Plan participants bear all investment and mortality risk, meaning there is no insurance aspect to these contracts. *See John Hancock Mut. Life Ins. Co.*, 510 U.S. at 96.

Defendants' singular focus on the noble and storied history of 403(b) annuities merely corroborates the sum and substance of Plaintiffs' allegations that Defendants were living in the past and failed to live up to contemporary fiduciary standards. Nonetheless, to the extent the allegations of the original Complaint were deficient for failing to address this history and its impact on Defendants' conduct, the FAC elaborates with an historical update, noting the 2007 Internal Revenue Service regulations, originally proposed in 2004, requiring modernization of 403(b) plans. As stated in the preamble to those regulations:

> As was noted in the preamble to the 2004 proposed regulations, the effect of the various amendments made to section 403(b) within the past 40 years has been to diminish the extent to which the rules governing section 403(b) plans differ from the rules governing other tax-favored employer-based retirement plans, including arrangements that include salary reduction contributions, such as section 401(k) plans . . . .

72  R 41129 (July 9, 2007).

**Plaintiffs' Claim: The withdrawal restrictions and surrender charge imposed on investments in the Traditional Annuity violate the provisions of ERISA §08(b)(2) and its related regulation at 29 C.F.R § 2550.408b-2(c)(3). Count II.**

**Defendants' Responses**:

> a. **"With respect to the timed withdrawal claim, the Court noted that 'charges for lump sum distribution and annual withdrawal requirements—are features inherent in a guaranteed fixed annuity fund' and, moreover, 'the ten-year period for transferring money out of the TIAA Traditional Annuity was disclosed on the first page of Mr. Wilcox's Group Retirement Annuity Certificate, issued on July 1, 2013 … long before the three-year statute of limitations for his claim relating to it.'** *Id.* **at 20 & n.11. The Court thus dismissed Mr. Wilcox's Traditional Annuity claims as well." Defs.' Br. at 9.**

Defendants did not raise any statute of limitations issue regarding the withdrawal restrictions on the Traditional Annuity in the DC Plan until it filed its Reply to Plaintiffs' Opposition to Defendants' motion to dismiss, and then only in a footnote, Dkt. 27 at 6, fn. 3. Therefore, Plaintiffs had no opportunity to respond to this specious claim. Since the District's Court's decision, however, the Supreme Court has addressed the "actual knowledge" requirement

for the application of the three years statute of limitations:

> As presently written, therefore, §1113(2) requires more than evidence of disclosure alone. That all relevant information was disclosed to the plaintiff is no doubt *relevant* in judging whether he gained knowledge of that information. See Part III, *infra*. To meet §1113(2)'s "actual knowledge" requirement, however, the plaintiff must in fact have become aware of that information.

*Intel Corp. Inv. Policy Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020). Moreover, 29 U.S.C. 1113(2) requires that a plaintiff have "actual knowledge of the breach or violation," meaning actual knowledge, not just of the fact of the restriction, but that the restriction constituted a fiduciary breach. Clearly, at the motion to dismiss stage, there was no evidence whatsoever of what Mr. Wilcox actually knew regarding the alleged fiduciary breach. Of course, Defendants' Opposition completely ignored *Sulyma*.

### b.   "[C]harges for lump sum distribution and annual withdrawal requirements are features inherent in a guaranteed fixed annuity fund." Op. at 20.

This finding was not based on any evidentiary examination of the contracts or the law, but simply cited the decision in *Davis v. Washington Univ. in St. Louis,* Case No. 4:17-cv-1641, 2018 WL 4684244 at *4 (E.D. Mo. Sept. 28, 2018), which was itself an unsupported assumption in connection with a ruling on a motion to dismiss, without any examination of the relevant contract. On appeal of that decision, the Eight Circuit did not consider whether the liquidity restrictions and penalty for withdrawal violated 29 C.F.R § 2550.408b-2(c)(3), finding that Plaintiffs had forfeited the argument by failing to thoroughly brief the issue. The enhanced allegations in FAC ¶ 60 clarify how the surrender charge reduces the value of the investment for all participants.

As expressly stated in 29 C.F.R § 2550.408b-2(c)(3), the purpose of the rule is to prevent plans from becoming locked into an arrangement that has become disadvantageous.   As acknowledged by Defendants' Opposition, the proposed FAC highlights the disadvantage to participants in light of the sustained historic returns of the equity markets.  Defendants claim the

District Court considered and rejected the argument, ruling that "it is not a breach of fiduciary duty to maintain the Plans as established tax-deferred vehicles under the particular protections of § 403(b)." That ruling, however, did not address whether the restrictions of 29 C.F.R § 2550.408b-2(c)(3) apply to 403(b) annuity contracts.

Defendants' Opposition next erroneously claim that the prohibitions of 29 C.F.R § 2550.408b-2(c)(3) do not apply to these investment contracts.[14] The preamble to the final 408(b)(2) rule states explicitly that "[t]he first category of covered service providers, described in paragraph [408(b)(2)(c)(1)(iii)(A), includes those providing services as an ERISA fiduciary or as an investment adviser registered under either the Investment Advisers Act of 1940 (Advisers Act) or any State law. This category is split into three subsections, as in the interim final rule: paragraph (*1*) includes ERISA fiduciary services provided directly to the covered plan; paragraph *(2) includes ERISA fiduciary services provided to an investment contract, product, or entity that holds plan assets . . . .*"  The proposed FAC alleges that assets invested in the Traditional Annuities, which are insurance company general account products, are plan assets. *See John Hancock Mut. Life Ins. Co.*, 510 U.S. at 96.

More importantly, as alleged FAC ¶ 125, the Department of Labor specifically addressed insurance industry comments about the application of 29 C.F.R § 2550.408b-2(c)(3) to surrender charges and other insurance product penalties and expressly declined to revise the rule, clearly disagreeing with Defendants' position on the issue. That includes Defendants' faulty assertion that it is the participants and not the Plans that are suffering the alleged penalty.  All of the annuity

---

[14] Remarkably, Defendants claim that the withdrawal restrictions actually benefit participants, and tout the 50 to 75 basis points in additional earnings provided by the restrictive Traditional Annuity in the DC Plan. Defs.' Opp. at 17.  Defendants are apparently unaware that on January 2, 2019, days before the District Court's ruling, the S&P 500 was at 2510. On December 31, 2021, it was at 4766, a 90% increase.

contracts at issue are Plan assets and subject to the benefits, restrictions and obligations of ERISA. While a participant has the right to direct the investment of Plan assets in participant-directed individual account plans, such as the Plans, the investment contracts are Plan assets and it is the Plans that suffer the alleged penalties.  That conclusion is inherent in the representative nature of all actions brought pursuant to ERISA section 502(a)(2). *See Braden*, 588 F.3d at 595.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend the Complaint should be granted.

Dated: January 24, 2022             By:     /s/ Ellen T. Noteware
                                            Todd S. Collins*
                                            Ellen T. Noteware*
                                            BERGER MONTAGUE PC
                                            1818 Market Street, Suite 3600
                                            Philadelphia, Pennsylvania 19103
                                            215-875-3000
                                            tcollins@bm.net
                                            enoteware@bm.net

                                            John J. Nestico*
                                            SCHNEIDER WALLACE COTTRELL
                                            KONECKY LLP
                                            6000 Fairview Rd, Suite 1200
                                            Charlotte, North Carolina 28210
                                            Telephone: (510) 740-2946
                                            jnestico@schneiderwallace.com

                                            Todd Schneider*
                                            James A. Bloom*
                                            SCHNEIDER WALLACE COTTRELL
                                            KONECKY WOTKYNS LLP
                                            2000 Powell Street, Suite 1400
                                            Emeryville, California 94608
                                            Telephone: (415) 421-7100
                                            Facsimile: (415) 421-7105
                                            tschneider@schneiderwallace.com

Eric Lechtzin (SBN: 248958)
EDELSON LECHTZIN LLP
3 Terry Drive, Suite 205
Newtown, PA 18940
Telephone: (267) 408-8445
elechtzin@edelson-law.com

*Attorneys for Plaintiffs*

*(Admitted *Pro Hac Vice*)

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2022, I electronically filed the forgoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Ellen T. Noteware*
Ellen T. Noteware